IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SARAH A. F.,

                            Plaintiff,

           v.                            Civil Action No.
                                       5:18-CV-681 (DEP)


COMMISSIONER OF SOCIAL SECURITY,


                            Defendant.

_____

<u>APPEARANCES</u>:                   <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

CONBOY, McKAY LAW FIRM    LAWRENCE D. HASSELER, ESQ.
307 State Street
Carthage, New York 13619

<u>FOR DEFENDANT</u>

HON. GRANT C. JAQUITH      ANDREEA L. LECHLEITNER, ESQ.
United States Attorney for the   Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>ORDER</u>

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Acting Commissioner, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1]  Oral argument was conducted in connection with those motions on December 11, 2018, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Plaintiff's motion for judgment on the pleadings is GRANTED.

2)      The Acting Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Social Security Act, is VACATED.

    3)    The matter is hereby REMANDED to the Acting Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

    4)    The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Acting Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:    December 11, 2018
        Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------x
SARAH A. F.,

                        Plaintiff,

vs.                              5:18-CV-681

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on December 11, 2018, at the

James Hanley Federal Building, 100 South Clinton

Street, Syracuse, New York, the HONORABLE DAVID E.

PEEBLES, United States Magistrate Judge, Presiding.


                    A P P E A R A N C E S

                      (By Telephone)

For Plaintiff:        CONBOY, McKAY LAW FIRM
                      Attorneys at Law
                      307 State Street
                      Carthage, New York  13619
                        BY:  LAWRENCE D. HASSELER, ESQ.

For Defendant:        SOCIAL SECURITY ADMINISTRATION
                      Office of Regional General Counsel
                      Region II
                      26 Federal Plaza - Room 3904
                      New York, New York  10278
                        BY:  ANDREA L. LECHLEITNER, ESQ.


            *Jodi L. Hibbard, RPR, CSR, CRR*
            *Official United States Court Reporter*
                *100 South Clinton Street*
              *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

1          (In Chambers, Counsel present by telephone.)

2          THE COURT:  So I have before me a request for

3     judicial review of an adverse determination by the Acting

4     Commissioner pursuant to 42 United States Code Section

5     405(g).

6          The background is as follows:  Plaintiff was born

7     in April of 1974 and is currently 44 years old.  She resides

8     in Black River, New York in a three-bedroom apartment.  The

9     plaintiff apparently is now separated from her second

10    husband.  She lives with two young daughters who were 9 and

11    11 years old at the time of the hearing in this matter.  She

12    also has an adult son that apparently does not reside with

13    her.  Plaintiff is a high school graduate.  She drives.

14         She last worked in 2013 according to her.  She

15    worked as an office manager in a car dealership that

16    apparently her husband had some ownership interest in from

17    2006 to 2013.  She also, prior to that, was an office manager

18    in an insurance company, a manager at a Gander Mountain

19    store, and an inventory manager at West Marine.  The -- I

20    know the Commissioner has said that it appears from medical

21    records that she worked in 2014, I've reviewed those records

22    at 291, 297, 321, and 336.  They appear to just, in my view,

23    repeat from prior notes of treatment dates, without really

24    getting new information from the plaintiff, and at one,

25    that's 309 that was cited by the Commissioner, she actually

1  describes herself as a homemaker.  So it doesn't appear to me

2  convincing that she worked in 2014.  If she did, it was only

3  the first couple or three months and I think she testified at

4  the hearing that she worked from home at the end of her

5  employment.

6        In any event, medically she suffers from several

7  conditions that have been diagnosed including obesity,

8  degenerative disk disease of the cervical, thoracic, and

9  lumbar levels, and she describes her pain as having begun in

10  2013.  For that she was on Percocet but is not currently on

11  any prescription medication.  She has been diagnosed as

12  suffering from fibromyalgia, and has been prescribed Cymbalta

13  in the past, Lyrica was also tried.

14        She has had testing, including spinal x-ray on

15  November 5, 2014, to determine whether there is any

16  inflammatory arthritis contributing to her pain and it was at

17  520 and that was negative.  For her arthritis she has sought

18  out various treatment providers including -- well, let me

19  finish.  She also suffers from migraines, she describes them

20  as persisting three times per month, that's at page 208.  She

21  has undergone Botox treatments and describes those treatments

22  as helping tremendously.  That's also at 208.  She has -- her

23  primary health care provider is through Samaritan Family

24  Health Center including Nurse Practitioners Sonja Pierce and

25  Sharen Yaworski.

1          She has received treatment for her fibromyalgia and

2     migraines from North Country Neurology including from

3     Dr. Abdul Latif and Dr. Mohsin Ali.  She also has received

4     treatment through the Arthritis Health Association, Dr. Ramzi

5     Khairallah.  Dr. Khairallah has opined that her fibromyalgia

6     accounts for most of the pain she experiences including at

7     379, 496, and 505 of the administrative transcript.

8          Plaintiff has undergone injections.  She at one

9     point was using a cane, at the -- as needed, as directed by

10    her primary health provider, that's at 202 to 204, although

11    at the hearing at page 42 she testified she did not use an

12    assistive device.  She also uses a TENS unit three to four

13    times per week, that's at page 46.

14         Plaintiff has also undergone physical therapy from

15    April of 2015 to June of 2015.  She underwent treatment at

16    Pain Solutions of Northern New York, Dr. Bhupinder Bolla.

17    She has been to the Samaritan Medicine -- Pain Clinic, and in

18    2016, went to the Mayo Clinic for pain treatment.

19         She has been on Percocet in the past, Cymbalta,

20    Neurontin, Effexor, Depakote, trazodone, Ambien or zolpidem,

21    Imitrex and Zofran.

22         She has some mental conditions including depression

23    and anxiety.  According to Dr. Melcher, the consultative

24    examiner, at page 528, she underwent six treatments through

25    the Northern New York Behavioral Health Center, Dr. Jeffrey

1    Aronowitz, from July of 2013 to October of 2013.  At the time

2    of the hearing she was not undergoing any mental health

3    treatment claiming payment issues.

4              In terms of daily activities, plaintiff shops,

5    cooks, does some chores with help, can take care of her

6    personal hygiene, cleans, does laundry, watches television,

7    listens to music, reads, and works on the computer.

8              In terms of procedural history, plaintiff applied

9    for Title II Disability Insurance benefits on November 15,

10    2014, alleging an onset date of February 8, 2013.

11    Administrative Law Judge John P. Ramos conducted a hearing on

12    February 13, 2017 to address the application for benefits.

13              ALJ Ramos issued a decision on March 23, 2017

14    finding that plaintiff was not disabled at the relevant times

15    and therefore not entitled to the benefits sought.

16              That became a final determination of the agency on

17    May 25, 2018 when the Social Security Administration Appeals

18    Council denied plaintiff's request for review.

19              In his decision, ALJ Ramos applied the familiar

20    five-step test for determining disability.

21              At step one, he concluded that plaintiff had not

22    engaged in substantial gainful activity since February 8,

23    2013.

24              At step two, he concluded that plaintiff does

25    suffer from severe impairments that provide more than minimal

1  limitations on the ability to perform work-related functions,

2  including fibromyalgia, migraine headaches, degenerative disk

3  disease of the cervical, thoracic, and lumbar spine,

4  depressive disorder, and anxiety disorder.

5       Proceeding to step three, ALJ Ramos concluded that

6  plaintiff's conditions did not meet or medically equal any of

7  the listed presumptively disabling conditions set forth in

8  the medical -- I'm sorry, in the Commissioner's regulations,

9  considering specifically Listings 1.04, 12.04, and 12.06.

10      He then concluded, after surveying the record

11 evidence, that plaintiff retains the residual functional

12 capacity or RFC to perform sedentary work, subject to the

13 following limitations:  The claimant retains the ability to

14 understand and follow simple instructions and directions,

15 perform simple tasks with supervision and independently,

16 maintain attention and concentration for simple tasks, and

17 regularly attend to a routine and maintain a schedule.  She

18 can relate to and interact with others to the extent

19 necessary to perform simple tasks, and she can handle

20 reasonable levels of simple work-related stress in that she

21 can make decisions directly related to the performance of

22 simple work and handle usual workplace changes and

23 interactions associated with simple work.

24      At step four, applying that residual functional

25 capacity, ALJ Ramos concluded that plaintiff is incapable of

1  performing her past relevant work as an inventory manager and

2  office manager.

3        At step five, applying the medical vocational

4  guidelines and specifically Rule 201.28, the ALJ concluded

5  that plaintiff is not disabled and therefore ineligible for

6  the benefits sought.

7        As you know, my task is limited and the scope of

8  review deferential.  I must determine whether correct legal

9  principles were applied and whether the determination is

10  supported by substantial evidence.

11        I have to say that I find this to be a difficult

12  case, as I think most fibromyalgia cases are.  Fibromyalgia

13  has been described by many courts, including the Seventh

14  Circuit in *Sarchet v. Chater*, 78 F.3d 305, as well as the

15  Second Circuit in its decision in *Green-Younger v. Barnhart*

16  at 335 F.3d 99.  One of the difficulties of course of

17  fibromyalgia, as the Seventh Circuit noted in *Sarchet*, is

18  that its symptoms are entirely subjective.  There are no

19  laboratory tests for the presence or severity of

20  fibromyalgia.  And so the Commissioner has issued SSR 12-2p

21  to give guidance as to how the fibromyalgia should be -- the

22  claim of fibromyalgia should be analyzed.

23        In this case, it's clear that the diagnosis at

24  least of Dr. Khairallah supports and complies with SSR 12-2p

25  as providing a medically determinable diagnosis of

1    fibromyalgia.  The question then of course becomes what are

2    its limitations.  The fact that a mere diagnosis of

3    fibromyalgia exists does not render the plaintiff

4    automatically disabled.  But the -- the SSR goes on to

5    provide that when there is insufficient evidence to determine

6    whether a person has fibromyalgia or is disabled, the agency

7    will take one or more actions to try to resolve the

8    insufficiency and one of those is to recontact the person's

9    treating or other sources to see if the information we need

10   is available.

11           In this case, I simply don't think that there is

12   the type of robust analysis, particularly of the opinions of

13   Dr. Latif and Dr. Khairallah who are not even mentioned by

14   name, that I would expect to see.  And this is of course an

15   administrative law judge I have a great deal of respect for,

16   ALJ Ramos is a seasoned ALJ, but in this case I think he

17   should have had a better discussion of Dr. Khairallah's notes

18   which clearly support the diagnosis and the existence of the

19   requisite number of trigger points.  In fact, even

20   Dr. Lorensen indicates that there are, I'm not sure quite I

21   understand how to interpret it, but Dr. Lorensen said 10 plus

22   trigger points I think in her opinion at page 523.  And I

23   guess I would say that I would have to caution -- the courts

24   are very clear that caution should be applied when a one-time

25   consultative exam is being used to override the opinions of a

1    treating source, and it's particularly true in fibromyalgia

2    which is elusive, comes and goes, good days, bad days.  And

3    the -- because of the nature of both the migraines and more

4    importantly the fibromyalgia, I think that it is, it was

5    improper for the administrative law judge to discount

6    Dr. Ali's medical source statement by saying that it is not

7    supported by objective evidence.  Dr. Ali, although he

8    primarily treated the migraines, he worked with Dr. Latif

9    hand in hand and presumably is well aware of the medical

10   treatment notes concerning the plaintiff's fibromyalgia.

11           I also am a little concerned because the plaintiff

12   was found to have a severe impairment in the form of

13   migraines but yet there's no discussion as to whether that

14   impairment factored into the RFC and there are no apparent

15   limitations in the RFC that one could attribute to the

16   migraine headaches.

17           The vocational expert issue I think is less of a

18   concern to me if the RFC determination is proper.  I think

19   SSR 85-15 supports the notion that application of the grids

20   was proper because of plaintiff's lack of any significant

21   limitations that would erode the job base for simple work

22   based on SSR 85-15.

23           So in sum, I think this is a matter that should be

24   returned to the agency, there's no persuasive evidence of

25   disability so I will order that the Commissioner's

1   determination be vacated and the matter be remanded for a

2   more thorough and careful consideration of plaintiff's

3   fibromyalgia and Dr. Khairallah's and Dr. Ali and Dr. Latif's

4   evidence and perhaps the requirement that they be recontacted

5   for a medical source statement.

6          Thank you both for excellent presentations, hope

7   you have a good day, and happy holidays.

8          MR. HASSELER:  Thank you, your Honor.

9          MS. LECHLEITNER:  Thank you, same to you.

10          (Proceedings Adjourned, 10:32 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

I, JODI L. HIBBARD, RPR, CRR, CSR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 11th day of December, 2018.

/S/ JODI L. HIBBARD

JODI L. HIBBARD, RPR, CRR, CSR
Official U.S. Court Reporter